## IN THE UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF ARKANSAS
## HELENA DIVISION

| | |
|---|---|
| **IN RE:  TURNER GRAIN MERCHANDISING, INC.,** | **Case No. 2:14-bk-15687** |
| | **(Chapter 7)** |
| **Debtor.** | **(Previous Chapter 11)** |
| | |
| **OAKLEY GRAIN, INC. AND** | **PLAINTIFFS** |
| **BRUCE OAKLEY, INC.** | |
| | |
| **v.** | **AP No. 2:19-ap-01015** |
| | |
| **M. RANDY RICE, TRUSTEE,** | |
| **TRAVIS MEARS, TRAVIS MEARS** | |
| **FARMS, INC., SCOTT MEARS, AND** | |
| **SCOTT MEARS FARMS, INC.** | **DEFENDANTS** |

### ORDER

Pending before the Court is the *Motion to Dismiss and Incorporated Brief in Support* (the "**Motion to Dismiss**") (AP No. 19-1015, Doc. No. 17) filed by M. Randy Rice, Chapter 7 Trustee (the "**Trustee**"), along with the response to same filed by Oakley Grain, Inc. and Bruce Oakley, Inc. (collectively, "**Oakley**") (AP No. 19-1015, Doc. No. 25); the reply filed by the Trustee (AP No. 19-1015, Doc. No. 26); the supplement to response filed by Oakley (AP No. 19-1015, Doc. No. 37); and the adoption of and response in support of the Motion to Dismiss filed by Travis Mears, Travis Mears Farms, Inc., Scott Mears, and Scott Mears Farms, Inc. (collectively referred to hereinafter as, "**Mears Farms**," whether referring to one or more) (AP No. 19-1015, Doc. No. 50).  Also pending before the Court is the *Motion for Leave to File Amended Complaint and for a Stay of Scheduled Hearing* (the "**Motion for Leave to Amend**") (AP No. 19-1015, Doc. No. 38) filed by Oakley; the response to same filed by the Trustee (AP No. 19-1015, Doc. No. 39); the reply filed by Oakley (AP No. 19-1015, Doc. No. 40); and the response filed by Mears Farms (AP No. 19-1015, Doc. No. 49).

In brief, the Trustee argues that this Court lacks subject matter jurisdiction over this declaratory judgment action brought by Oakley. Mears Farms agrees. Oakley disagrees and asserts that this Court does have subject matter jurisdiction over its declaratory judgment action, but also requests leave to amend its original complaint "to expand upon and better explain [its] basis for subject matter jurisdiction." (AP No. 19-1015, Doc. No. 38 ¶ 5). Oakley attaches its proposed amended complaint to its Motion for Leave to Amend. (AP No. 19-1015, Doc. Nos. 38-1, 38-2). The Trustee contends that the proposed amended complaint does not remedy the jurisdictional issues that plague the original complaint, and, accordingly, leave to amend should be denied as futile. Mears Farms again agrees.

A hearing on these matters was held on April 18, 2019,[1] out of division in Little Rock, Arkansas, by agreement of the parties. At the hearing, Mr. Hamilton Moses Mitchell of Rice & Associates, P.A.[2] appeared on behalf of the Trustee; Mr. Barrett S. Moore of Blair & Stroud appeared on behalf of Mears Farms; and Messrs. Stuart W. Hankins and Allen Vaughan Hankins of Hankins Law Firm, P.A., and Mr. Fletcher C. Lewis, attorney at law, appeared on behalf of Oakley. After hearing the arguments of counsel, the Court took judicial notice of several items[3] and then took the matters under advisement.

---

[1] In its Motion for Leave to Amend, Oakley also requested that the hearing on the Trustee's Motion to Dismiss be stayed, arguing that the Trustee could "easily assert" a motion to dismiss against the amended complaint. (AP No. 19-1015, Doc. No. 38 ¶ 7). This Court declined to stay the hearing and instead elected to hear both the Motion to Dismiss and the Motion for Leave to Amend at the same time on April 18, 2019.

[2] Now of H.M. Mitchell & Co., P.L.L.C.

[3] At the conclusion of the hearing, and later in an e-mail communication to the parties, the Court announced it would take judicial notice of several pleadings and filings made in the Debtor's underlying bankruptcy case, Case No. 2:14-bk-15687, as well as several pleadings and filings made in various adversary proceedings filed in connection with the Debtor's underlying bankruptcy case. The Court has taken judicial notice of the following: (1) all the pleadings heard by this Court on February 21, 2019, in AP No. 2:15-ap-01009 and the Debtor's main bankruptcy case, and this Court's oral rulings on those pleadings; (2) to the extent not already covered, all the pleadings, filings, hearings, and rulings in AP No. 2:15-ap-01009, including any and all filings made with or by the United States District Court for the Eastern District of Arkansas or Eighth Circuit Court of Appeals in connection with the matter, and also including the pleadings in the state court action (defined later herein as the State Court Action) that was

2

Although the Court's jurisdiction to hear this declaratory judgment action is questioned, this Court "has jurisdiction to determine whether it in fact has subject-matter jurisdiction" of this action. *Bavelis v. Doukas (In re Bavelis)*, 453 B.R. 832, 844 (Bankr. S.D. Ohio 2011). For the following reasons, the Motion for Leave to Amend is denied and the Motion to Dismiss is granted.

## I.  Background

This declaratory judgment action represents the most recent litigation in a series of continued and protracted disputes involving Oakley and other parties stemming from the bankruptcy filing of Turner Grain Merchandising, Inc. (the "**Debtor**"). A brief history of the various actions and lawsuits between the parties is necessary for an understanding of this current dispute.

### A.  Prior Litigation and Filings

#### *(1) The Interpleader Action (AP No. 2:15-ap-01009)*

On August 19, 2014, prior to the Debtor's bankruptcy filing, Oakley filed an interpleader action (the "**Interpleader Action**") in the United States District Court for the Eastern District of Arkansas, naming the Debtor as one of many defendants. (AP No. 15-1009, Doc. No. 3).[4] Oakley deposited $368,334.38 (the "**Interpleader Funds**") with the District Court and the District Court entered an order enjoining all defendants, including those named and those

---

removed into AP No. 2:15-ap-01009; (3) all the pleadings, filings, hearings, and rulings in AP No. 2:18-ap-01112; (4) all the pleadings, filings, hearings, and rulings in AP No. 2:19-ap-01015; (5) all pleadings and filings in AP No. 2:16-ap-01123, including the motion to confirm compromise settlement and the order approving the settlement; (6) the notice of opportunity to object to the settlement in AP No. 2:16-ap-01123, which notice was filed in the Debtor's underlying bankruptcy case at Doc. No. 661; (7) the claims register in the Debtor's underlying bankruptcy case; (8) Claim No. 7 filed by Mears Farms in the Debtor's underlying bankruptcy case; (9) Claim No. 125 filed by Oakley in the Debtor's main bankruptcy case; and (10) Claim No. 28 filed by Mears Farms in the bankruptcy case of Dale Bartlett, Case No. 2:14-bk-14794, pending before the Bankruptcy Court for the Eastern District of Arkansas.

[4] The case was assigned Case No. 4:14-cv-483 in District Court.

identified as John and Jane Doe, from instituting or prosecuting any action against Oakley

relating to the Interpleader Funds, and also dismissing Oakley as a party to the case.

(AP No. 15-1009, Doc. Nos. 77, 127).

After the Debtor filed for bankruptcy protection, the Interpleader Action was referred to

this Court as an adversary proceeding related to the Debtor's bankruptcy case and assigned

AP No. 2:15-ap-01009.  (AP No. 15-1009, Doc. No. 1).  Oakley originally opposed the referral

of the Interpleader Action to this Court but withdrew its opposition after the District Court issued

the injunction and dismissed Oakley from the case.  (AP No. 15-1009, Doc. Nos. 122, 123, 127,

129 at 15).

On September 29, 2015, this Court entered an order finding $240,059.30 of the

Interpleader Funds are property of the Debtor's bankruptcy estate and ordering turnover of those

funds to the bankruptcy trustee.[5]  (Case No. 14-15687, Doc. No. 362; *see also* AP No. 15-1009,

Doc. No. 154-1).  After resolving issues with the only creditor asserting an interest in the balance

of the Interpleader Funds, Helena National Bank, the Trustee sought turnover of the balance of

the Interpleader Funds by submitting a proposed precedent to this Court.  Oakley filed a limited

objection to the language in the proposed precedent and the Trustee filed a response.

(AP No. 15-1009, Doc. Nos. 225, 227).  On February 21, 2019, the Court heard the matter and

overruled Oakley's limited objection.  (AP No. 15-1009, Doc. No. 267).  The Court entered an

order finding that the remaining $128,275.18 of the Interpleader Funds are property of the

bankruptcy estate and ordering release of those funds to the Trustee.  (AP No. 15-1009,

Doc. No. 259).

---

[5] Richard L. Cox served as Chapter 7 Trustee at the time.

4

### (2) *Mears Farms' Proof of Claim (Case No. 2:14-bk-15687, Claim No. 7)*

On December 11, 2014, Mears Farms filed a proof of claim in the Debtor's bankruptcy

case in the amount of $910,033.67, Claim No. 7.  The claim was filed as a secured claim, secured

by a "Contract for Sale of grain," and the basis of the claim was listed as "Mears Corn and

Wheat Sales through Turner Grain." (Case No. 14-15687, Claim No. 7).

### (3) *The Mears Preference Action (AP No. 2:16-ap-01123)*

On October 10, 2016, the Trustee filed a preference action in this Court against Mears

Farms and Heritage Bank, N.A. (later known as Bear State Bank), AP No. 2:16-ap-01123 (the

"**Mears Preference Action**").  (AP No. 16-1123, Doc. No. 1).  In the Mears Preference Action,

the Trustee alleged, among other things, that a prepetition payment made by the Debtor in the

amount of $141,028.90 was a preferential transfer, and that the proof of claim filed by Mears

Farms in the amount of $910,033.67 should be disallowed until the preference is paid.

(AP No. 16-1123, Doc. No. 1).

On October 4, 2017, a motion to confirm proposed compromise settlement was filed in

the Mears Preference Action and the Debtor's main bankruptcy case, along with a notice of

opportunity to object.  (AP No. 16-1123, Doc. Nos. 28, 29; Case No. 14-15687, Doc. Nos. 660,

661).  Oakley Grain, Inc. was listed as receiving notice of the opportunity to object to the

proposed compromise settlement.  (AP No. 16-1123, Doc. No. 29; Case No. 14-15687,

Doc. No. 661).  No objections were filed and on November 2, 2017, an order confirming the

compromise settlement was entered in the Mears Preference Action and the Debtor's main

bankruptcy case.  (AP No. 16-1123, Doc. No. 31; Case No. 14-15687, Doc. No. 677).  Pursuant

to the settlement, Mears Farms paid $23,500.00 to the bankruptcy estate to settle the claims

against it.  (AP No. 16-1123, Doc. No. 31; Case No. 14-15687, Doc. No. 677).  As part of the

settlement, the parties agreed that the proof of claim filed by Mears Farms would be "deemed

allowed" as a general unsecured claim in amount of $910,033.67, and Mears Farms waived and

released any and all claims it may have against the Trustee or the bankruptcy estate.

(AP No. 16-1123, Doc. No. 31; Case No. 14-15687, Doc. No. 677).

### (4) The Mears Farms State Court Action (removed into the Interpleader Action, AP No. 15-1009)

On June 23, 2017, Mears Farms filed a lawsuit in the Circuit Court of Jackson County,

Arkansas, against Oakley and others (the "**State Court Action**"). The State Court Action is

styled *Travis Mears Farms, Inc. and Scott Mears Farms, Inc. v. Oakley Grain, Inc., Bruce*

*Oakley, Inc., Gavilon Grain, LLC, Jason Coleman, Neauman Coleman, and John Does 1*

*through 10.* (AP No. 15-1009, Doc. No. 168). Neither the Debtor nor the Trustee were named

as defendants to the State Court Action.

In the State Court Action, Mears Farms alleges that "Turner Grain, Inc. and Turner Grain

are pseudonyms for a partnership, joint venture, [or] joint enterprise" between the Debtor, Jason

Coleman, Neauman Coleman, Dale Bartlett, and their many "alter egos," which Mears Farms

defines in the complaint as "Turner." (AP No. 15-1009, Doc. No. 168 at 14). Mears Farms

alleges that "Turner" acted as an agent for Oakley and Gavilon Grain, LLC ("**Gavilon**") in

various grain sale transactions with Mears Farms. Mears Farms alleges that in the summer of

2014, it sold grain *to* Oakley and Gavilon *through* "Turner" but was never paid for the grain.

In Count I of the State Court Action, Mears Farms alleges that Oakley and Gavilon

impliedly and/or expressly promised to pay the purchase price for the grain, and by not paying

Mears Farms for the grain, they breached these implied and expressed promises to pay.

(AP No. 15-1009, Doc. No. 168 at 20–21). In Count II, Mears Farms brings a claim for unjust

enrichment against Oakley and Gavilon for the same actions. (AP No. 15-1009,

Doc. No. 168 at 22). In Count III, Mears Farms brings a cause of action for conversion against

6

Oakley and Gavilon for the same actions.  (AP No. 15-1009, Doc. No. 168 at 22–23).  In Count IV, Mears Farms brings an action for negligence against Oakley and Gavilon, alleging that Oakley and Gavilon knew or should have known that "Turner" was in financial distress, that Oakley and Gavilon knew Mears Farms owned the grain at issue, and that Oakley and Gavilon failed to exercise ordinary care by entrusting their agent, "Turner," with the duty to transmit the purchase price for the grain to Mears Farms.  (AP No. 15-1009, Doc. No. 168 at 23–25).

In Count V, Mears Farms brings an alternative action against Jason Coleman and Neauman Coleman for conversion.  Mears Farms alleges that "Turner" received payments from Oakley and Gavilon for the grain at issue; that the payments were made to "Turner" as an *agent* for Oakley and Gavilon with direction to pay Mears Farms; that "Turner" failed to transmit payments to Mears Farms and instead converted the funds to its own use; and Mears Farms should have judgment against Jason Coleman and Neauman Coleman as partners or members of "Turner" for this conversion.  (AP No. 15-1009, Doc. No. 168 at 25–26).

Finally, in Count VI, Mears Farms brings all allegations alleged in the complaint against John Does 1 through 10.  (AP No. 15-1009, Doc. No. 168 at 26–27).

Mears Farms requests judgment against Oakley in the amount of $533,164.00 and judgment against Gavilon in the amount of $376,968.00.  (AP No. 15-1009, Doc. No. 168 at 27).  Alternatively, it requests judgment against Jason Coleman and Neauman Coleman for the total amount of $910,132.00.  (AP No. 15-1009, Doc. No. 168 at 27).  Mears Farms does not seek judgment against the Debtor or the bankruptcy estate.

On August 2, 2017, Oakley removed the State Court Action *into* the Interpleader Action by filing a notice of removal.  (AP No. 15-1009, Doc. No. 166).  To maintain consistency with

the parties' arguments, the complaint filed in the State Court Action is referred to hereinafter as the "**Removed Complaint**."

In its amended notice of removal filed on August 3, 2017, Oakley specifically asserted that it did not consent to this Court entering final orders or judgment in the removed State Court Action. (AP No. 15-1009, Doc. No. 168 at 7). On August 23, 2017, Oakley filed a motion to withdraw the reference, asking the District Court to withdraw the reference as to the entire adversary proceeding, which included both the original Interpleader Action and the newly removed State Court Action. (AP No. 15-1009, Doc. No. 179).

While the motion to withdraw the reference was pending before the District Court, Mears Farms filed a motion to abstain and remand, asking this Court to remand the State Court Action to the Circuit Court of Jackson County, Arkansas. (AP No. 15-1009, Doc. No. 185). Oakley filed a response in opposition to the motion for abstention and remand. (AP No. 15-1009, Doc. No. 192). On September 12, 2017, this Court entered an order staying all proceedings within the entire adversary proceeding pending the District Court's ruling on Oakley's motion to withdraw the reference. (AP No. 15-1009, Doc. No. 200).

On November 7, 2018, the District Court entered an order denying Oakley's motion to withdraw the reference. (AP No. 15-1009, Doc. No. 208). Oakley appealed the District Court order to the Eighth Circuit Court of Appeals, but its appeal was dismissed on January 2, 2019, on motion of the Trustee. (Case No. 14-15687, Doc. No. 893-1 at 51).

On February 21, 2019, this Court heard the motion for abstention and remand, and the various responses and replies filed by the parties. At the conclusion of the hearing, this Court granted the motion for abstention and remanded the State Court Action to the Circuit Court of Jackson County, Arkansas. In making its ruling from the bench, this Court found that it was

8

required to abstain from hearing the State Court Action under the mandatory abstention provisions of 28 U.S.C. § 1334(c)(2), but even if it were not, that it would exercise its discretion to abstain under the permissive abstention provisions of 28 U.S.C. § 1334(c)(1).

This Court specifically found that the State Court Action was based solely on state law; that the State Court Action involved only non-debtor parties; that the claims existed prior to the bankruptcy filing and were not based on or dependent on the Bankruptcy Code, and therefore, the State Court Action was not a core proceeding; that, at most, this Court had "related to" jurisdiction of the State Court Action, but did not have "arising under" or "arising in" jurisdiction; that the State Court Action could not have been brought before this Court absent 28 U.S.C. § 1334; and that the state court was the better forum to adjudicate the state law issues raised in the State Court Action.  (AP No. 15-1009, Doc. No. 280 at 107, 110–12, 115–16).[6]

In addition, this Court stated that it appeared the removing party, Oakley, could have been engaged in forum shopping, noting Oakley initially opposed referral of the Interpleader Action to this Court, but later removed the State Court Action, not just to this Court, but *into* the Interpleader Action, and then immediately filed the motion to withdraw the reference back to the District Court, then opposed the motion to abstain and remand, all while stating that it did not consent to this Court entering final orders or judgment on the Removed Complaint. (AP No. 15-1009, Doc. No. 280 at 115–16).

An order memorializing this Court's oral ruling was entered on February 28, 2019. (AP No. 15-1009, Doc. No. 274).

---

[6] The transcript of the February 21, 2019 hearings can also be found in the Debtor's main bankruptcy case, Case No. 2:14-bk-15687, at Doc. No. 917.

### (5) Oakley's Motion to Enforce Stay (filed in the Interpleader Action, AP No. 15-1009)

In December 2018, while Mears Farms' motion to abstain and remand the State Court Action was pending, Oakley filed a motion to enforce the automatic stay (the "**Motion to Enforce Stay**") in the Interpleader Action and in the Debtor's main bankruptcy case, alleging the State Court Action violated the automatic stay and should be dismissed as void ab initio. (AP No. 15-1009, Doc. No. 218; Case No. 14-15687, Doc. No. 887).  In the Motion to Enforce Stay, Oakley asserted that the funds sought in the State Court Action were the same funds covered by Mears Farms' proof of claim filed in the Debtor's bankruptcy case, and Mears Farms was improperly seeking to recover property of the estate in the State Court Action.  Oakley supplemented its motion on January 11, 2019, and asserted that the State Court Action not only violated the automatic stay, but also violated the District Court injunction issued in the Interpleader Action.  (AP No. 15-1009, Doc. No. 235; Case No. 14-15687, Doc. No. 897).

On February 21, 2019, this Court heard the Motion to Enforce Stay, the supplemental motion, and the various responses and replies filed thereto.  This Court denied Oakley's motions and found Mears Farms did not violate the automatic stay in filing the State Court Action.  As to Oakley's arguments regarding Count V of the State Court Action in particular, in which Mears Farms seeks a judgment against Jason Coleman and Neuman Coleman as members of "Turner," the Court specifically found that the automatic stay did not apply to Count V at the time of the hearing.[7]  (AP No. 15-1009, Doc. No. 280 at 73).  This Court found further that the remaining counts of the Removed Complaint did not violate the automatic stay, as they were actions on

---

[7] The Court denied the Motion to Enforce Stay as to Count V, but the denial was without prejudice to refiling if new information became available that Jason Coleman's estate or Neauman Coleman did have possession of money that the Debtor allegedly converted, and if Mears Farms were seeking *those* funds, which would be properly sought by the Trustee instead.  (AP No. 15-1009, Doc. No. 280 at 73).

claims that were personal to Mears Farms and not ones that could be pursued by the Trustee standing in the shoes of the Debtor.  (AP No. 15-1009, Doc. No. 280 at 73–77).  The Court also found that no evidence was presented to show that the funds sought in the State Court Action were the same as the Interpleader Funds, and Oakley's supplemental motion was also denied.[8] (AP No. 15-1009, Doc. No. 280 at 77–78).

An order memorializing the Court's ruling on the Motion to Enforce Stay and supplemental motion was entered on February 28, 2019.  (AP No. 15-1009, Doc. No. 272; Case No. 14-15687, Doc. No. 912).

On March 7, 2019, Oakley moved for a new trial, or for this Court to alter or amend the judgment on the Motion to Enforce Stay and supplemental motion.  (AP No. 15-1009, Doc. No. 278; Case No. 14-15687, Doc. No. 915).  The Trustee and Mears Farms filed responses and Oakley filed replies to the responses. (AP No. 15-1009, Doc. Nos. 279, 294, 283, 295; Case No. 14-15687, Doc. Nos. 916, 921).  The parties agreed that the Court should decide the matter on the pleadings and that no hearing was necessary.  An order has been entered simultaneously with the entry of this order denying Oakley's motion.

### *(6) Trustee Turnover Action (AP No. 2:18-ap-01112)*

On December 24, 2018, the Trustee filed an action against Oakley seeking a judgment and turnover of amounts the Trustee alleges Oakley owes the Debtor pursuant to certain written contracts, AP No. 2:18-ap-01112 (the "**Trustee Turnover Action**").  (AP No. 18-1112, Doc. No. 1).  The Trustee requests judgment against Oakley in the total amount of $235,730.00.

---

[8] The Court denied the motion, but again, without prejudice for a determination to be made after an evidentiary hearing to determine whether the funds sought in the State Court Action were the same funds as the Interpleader Funds, a determination this Court stated could be made by this Court or in another forum.  (AP No. 15-1009, Doc. No. 280 at 78–79).

(AP No. 18-1112, Doc. No. 1).  The Trustee alleges the amount owed to the estate is *in excess* of the amount deposited by Oakley in the Interpleader Action.  (AP No. 18-1112, Doc. No. 1).

On January 9, 2019, Oakley filed a motion to dismiss the complaint and compel arbitration, stating the contracts at issue contain valid arbitration clauses.  (AP No. 18-1112, Doc. No. 7).  This Court held a hearing on the motion and related filings on May 9, 2019. Following the hearing, the Court took the matter under advisement and it remains pending before this Court.

### B.  This Declaratory Judgment Action (AP No. 2:19-ap-01015)

With the preceding background in mind, the Court turns to the declaratory judgment action at hand.  On February 14, 2019, Oakley filed this declaratory judgment action against Mears Farms and the Trustee.  In its original complaint, Oakley asks this Court to make various declarations, which it organizes into nine subparagraphs of Paragraph 31, labeled 31(a) through (i).  (AP No. 19-1015, Doc. No. 1).  On March 12, 2019, the Trustee filed his Motion to Dismiss alleging this Court does not have subject matter jurisdiction.  (AP No. 19-1015, Doc. No. 17). Oakley filed its response on March 25, 2019, and the Trustee replied the next day. (AP No. 19-1015, Doc. Nos. 25, 26).

On March 28, 2019,[9] Oakley filed a proof of claim in the Debtor's bankruptcy case, Claim No. 125.  (Case No. 14-15687, Claim No. 125).  The claim is for an "unknown" amount and the "basis of the claim" is listed as a "contingent claim for attorneys [sic] fees incurred in defending written contract claims asserted by M. Randy Rice, Trustee in Case No. 2:18-ap-01112.  See attached contracts." (Case No. 14-15687, Claim No. 125).

---

[9] On March 28, 2019, Oakley also filed a motion for summary judgment. (AP No. 19-1015, Doc. No. 29).  The Trustee moved for an order staying the motion for summary judgment pending this Court's ruling on his Motion to Dismiss, which this Court granted by order entered on April 12, 2019.  (AP No. 19-1015, Doc. No. 44).

Five days later, on April 2, 2019, Oakley filed its Motion for Leave to Amend, seeking permission to amend its original complaint "to expand upon and better explain [its] basis for subject matter jurisdiction."  (AP No. 19-1015, Doc. No. 38 ¶ 5).  Oakley attached its proposed amended complaint to the Motion for Leave to Amend.  (AP No. 19-1015, Doc. Nos. 38-1, 38-2).  In its proposed amended complaint, Oakley asks this Court to make various declarations, which it again organizes into nine subparagraphs of Paragraph 31, labeled 31(a) through (i).  (AP No. 19-1015, Doc. No. 38-2 ¶ 31).

The declarations Oakley seeks in the proposed amended complaint are basically the same as the declarations it seeks in its original complaint.  The declarations, as edited to show the difference between the original complaint and the proposed amended complaint,[10] are as follows:

> 31.    Based on the foregoing, Oakley is entitled to the entry of a declaratory judgment finding that:
>
> (a)    Turner Grain, Inc. and Turner Grain are the registered fictitious names of the Debtor and the Debtor did business under those fictitious names in 2013 and 2014 before those fictitious names were registered with the Arkansas Secretary of State on August 2, 2016.
>
> (b)    There is nothing in the Debtor's Statement of Financial Affairs, other Schedules or the Debtor's business records which reflect that the Debtor was a member of a partnership, joint venture or joint enterprise with the Turner Entities that operated under the name Turner Grain, Inc. or Turner Grain or that this alleged partnership had any assets or liabilities in which the Debtor had an interest.
>
> (c)    At all times relevant to the Removed Complaint, the Debtor operated in the grain merchandising industry and purchased grain from farmers for re-sale to merchandisers and other grain buyers.
>
> (d)    The Debtor did not act as a broker, escrow agent or fiduciary with regard to the [Mears Farms] grain sales that are the subject of the Removed Complaint.
>
> (e)    The Debtor did not act as an agent for Oakley with regard to the [Mears Farms] grain sales that are the subject of the Removed Complaint and the

---

[10] The underlined portions are added by the proposed amended complaint and the struck-through portions are deleted by the proposed amended complaint.

Debtor did not disclose to Oakley that [Mears Farms] was the owner/seller of the grain sales that are the subject of the Removed Complaint.

(f)     The Debtor was the lawful owner of the grain which it purchased from [Mears Farms] and which the Debtor in turn sold to Oakley and the funds paid by Oakley to the Debtor for the grain which is the subject of the Removed Complaint <u>and the [Mears Farms] Proof of Claim</u> became the property of the Debtor and to the extent any funds from such sales remained in or came into the Debtor's possession on or after October 23, 2014 or were part of the Interpleader Funds, they became property of the Debtor's estate pursuant to 11 U.S.C. § 541.

(g)     The Debtor's sales of the grain to Oakley which are the subject of the Removed Complaint <u>and the [Mears Farms] Proof of Claim</u> were done in the ordinary course of business and the Debtor vested good title to such grain in Oakley which was bona a [sic] fide purchaser for value without notice.

(h)     The [Mears Farms] Proof of Claim which has been ~~approved~~ <u>deemed allowed</u> by the Trustee is based on the sale of ~~such~~ grain <u>by [Mears Farms]</u> to the Debtor ~~without any reference to the money claimed being held by the Debtor acting~~ <u>and which the Debtor in turn sold to Oakley and the funds paid by Oakley to the Debtor became property of the Debtor and the Debtor did not act</u> as a broker, escrow agent or fiduciary ~~and without any reference to any broker's, escrow agent's or fiduciary's fees or commissions being owed to the  Debtor's estate~~ <u>with regard to such funds</u> and the [Mears Farms] Proof of Claim represents [Mears Farms'] ~~their sole~~ <u>election of the exclusive</u> remedy for the money claimed to <u>be</u> due for the grain sales that are the subject of the Removed Complaint <u>and the Proof of Claim</u>.

(i)     The automatic stay should be enforced with regard to the Removed Complaint to the extent that it seeks findings of fact or conclusions of law about the Debtor's pre-petition and post petition activities that are contrary to the above findings (a) through (h) above specifically including, without limitation, the allegations of paragraph 47 of the Removed Complaint that the Debtor "by reason of its conversion of Plaintiffs [sic] property, is liable to the Plaintiffs for the amount of funds it received and converted" and all allegations of the Debtor acting as an agent of Oakley, or as a broker, escrow agent or fiduciary with regard to the sales of grain that are the subject of the Removed Complaint.

(AP No. 19-1015, Doc. Nos. 1, 38-2).  On April 2, 2019, the Trustee filed his response to the

Motion for Leave to Amend.  (AP No. 19-1015, Doc. No. 39).  Oakley replied the next day.

(AP No. 19-1015, Doc. No. 40).  On April 16, 2019, Mears Farms filed a response in support of

the Trustee's Motion to Dismiss and a response in opposition to Oakley's Motion for Leave to

Amend.  (AP No. 19-1015, Doc. Nos. 50, 49).

The declarations sought by Oakley (in both the original and proposed amended complaints) are directly related to the allegations against it in the State Court Action. For example, in the State Court Action, Mears Farms alleges:

> Turner Grain, Inc. and Turner Grain are pseudonyms for a partnership, joint venture, joint enterprise the partners, or members of which were, at the times relevant herein, Turner Grain Merchandising, Inc., (TGM), Jason, Neauman, Dale Bartlett and, their many "alter egos" as identified in paragraph 8 [sic] below. This partnership, joint venture, or joint enterprise is hereinafter referred to herein as "Turner."

(AP No. 19-1015, Doc. No. 1-4 ¶ 8). In this declaratory judgment action (in both the original complaint and the proposed amended complaint), Oakley seeks declarations that "Turner Grain, Inc. and Turner Grain are the registered fictitious names of the Debtor and the Debtor did business under those fictitious names in 2013 and 2014 before those fictitious names were registered with the Arkansas Secretary of State on August 2, 2016." (AP No. 19-1015, Doc. Nos. 1 ¶ 31(a), 38-2 ¶ 31(a)).

As another example, in the State Court Action, Mears Farms alleges this "partnership" or "joint venture" it defined as "Turner" acted as the *agent* for Oakley and the sale of grain was a sale *from Mears Farms to Oakley*. (AP No. 19-1015, Doc. No. 1-4 ¶¶ 16–25) (emphasis added). In this declaratory judgment action (in both the original complaint and the proposed amended complaint), Oakley seeks declarations that the "Debtor did *not* act as an agent for Oakley with regard to the [Mears Farms] grain sales that are the subject of the Removed Complaint" and that the "Debtor was the lawful owner of the grain which it purchased from [Mears Farms] and which the *Debtor in turn sold to Oakley*." (AP No. 19-1015, Doc. Nos. 1 ¶ 31(e)–(f), 38-2 ¶ 31(e)–(f)) (emphasis added).

With only two exceptions, the declarations Oakley seeks in both the original complaint and the proposed amended complaint are the mirror images of, or Oakley's defenses to, the

15

allegations made against it in the State Court Action.[11]  The two exceptions are contained in the declarations sought in subparagraphs 31(f) and (i), but as will be explained in greater detail below, the Court has previously ruled on the issues raised by these declarations.

## II.  Arguments

As more fully discussed below, the Trustee argues that this Court lacks subject matter jurisdiction over this declaratory judgment action because there is not an actual controversy between all the parties, or, alternatively, because this Court lacks subject matter jurisdiction under 28 U.S.C. § 1334.  (AP No. 19-1015, Doc. No. 17).  The Trustee also argues this action is an inappropriate use of the Declaratory Judgment Act and this Court should abstain from hearing the action.  *Id.*  Mears Farms agrees.  (AP No. 19-1015, Doc. No. 50).  Oakley disagrees and asserts that there is an actual controversy involving all the parties, including the Trustee; that this Court has jurisdiction because certain declarations are based on provisions of the Bankruptcy Code; and that this action is an appropriate use of the Declaratory Judgment Act. (AP No. 19-1015, Doc. No. 25).

Oakley further requests the Court to grant its Motion for Leave to Amend so it may "expand upon and better explain [its] basis for subject matter jurisdiction."  (AP No. 19-1015, Doc. No. 38 ¶ 5).  The Trustee responds that leave to amend should be denied as futile because the proposed amended complaint is "virtually identical" to the original complaint and does not

---

[11] In fact, Oakley admits the declaratory judgment action and State Court Action are directly, and inversely, related. In its response to the Motion to Dismiss, Oakley characterizes certain declarations as "100% controverted by the allegations in the Removed Complaint" and further states the complaint in the State Court Action "seeks the opposite determination" as certain declarations.  (AP No. 19-1015, Doc. No. 25 at 7, 9).  Moreover, counsel for Oakley stated at the February 21, 2019 hearings, in arguing against abstention and remand of the State Court Action, that "there is a substantial risk of inconsistent results if the case is remanded, since Oakley has the pending adversary proceeding for declaratory judgment in 2:19-ap-01015, *in which the issues sought to be declared are completely contrary to the pleadings in the restated – or the [R]emoved [C]omplaint.*"  (AP No. 15-1009, Doc. No. 280 at 82) (emphasis added).

remedy the jurisdictional deficiencies of the original complaint. (AP No. 19-1015, Doc. No. 39 ¶ 5). Mears Farms again agrees with the Trustee. (AP No. 19-1015, Doc. No. 49).

In ruling on the Motion to Dismiss and Motion for Leave to Amend, this Court will consider both the declarations sought in the original complaint and the declarations sought in the proposed amended complaint. Again, the declarations sought in the two pleadings are substantially similar.

### III. Discussion

In evaluating its jurisdiction, the Court looks to the Declaratory Judgment Act, which provides in relevant part:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a) (2012). Although there is a split among the circuits,[12] the law is clear in the Eighth Circuit that bankruptcy courts have "the power to issue declaratory judgments" under the Declaratory Judgment Act "when the matter in controversy regards the administration of a pending bankruptcy estate." *Sears, Roebuck & Co. v. O'Brien*, 178 F.3d 962, 964 (8th Cir. 1999) (citing *Nat'l Union Fire Ins. Co. v. Titan Energy, Inc. (In re Titan Energy, Inc.)*, 837 F.2d 325, 329–30 (8th Cir. 1988)).

The Declaratory Judgment Act is a procedural statute, not a jurisdictional statute. *See, e.g.*, *Skelly Oil Co. v. Phillips Petrol. Co.*, 339 U.S. 667, 671 (1950) ("Congress enlarged the range of remedies available in the federal courts [with the Declaratory Judgment Act] but did not extend their jurisdiction."); *Missouri ex rel. Mo. Highway & Transp. Comm'n v. Cuffley*, 112

---

[12] *See Olsen v. Reuter (In re Reuter)*, 499 B.R. 655, 663 (Bankr. W.D. Mo. 2013) (discussing split among circuits).

17

F.3d 1332, 1334 (8th Cir. 1997) ("It has long been understood that the federal Declaratory

Judgment Act . . . is a procedural statute, not a jurisdictional statute.").

To determine whether the Court has jurisdiction over the declarations sought, this Court

will begin with an analysis of whether this declaratory judgment action involves an actual

controversy.

### A.  Actual Controversy

As stated in the Declaratory Judgment Act, itself, the case must be one of "actual

controversy."  28 U.S.C. § 2201(a) (2012).  "The distinction is between a case appropriate for

judicial determination on the one hand, and a difference or dispute of a hypothetical or abstract

character on the other."  *FL Receivables Tr. 2002-A v. Gilbertson Rests. LLC (In re Gilbertson

Rests. LLC)*, No. 04-9061, 2004 WL 2357985, at *3 (Bankr. N.D. Iowa Oct. 12, 2004) (citing

*Sherwood Med. Indus., Inc. v. Deknatel, Inc.*, 512 F.2d 724, 726 (8th Cir. 1975)).  Put another

way, "[t]he basic inquiry is whether the 'conflicting contentions of the parties . . . present a real,

substantial controversy between parties having adverse legal interests, a dispute definite and

concrete, not hypothetical or abstract.'"  *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S.

289, 298 (1979) (quoting *Ry. Mail Ass'n v. Corsi*, 326 U.S. 88, 93 (1945)).

In *Sears, Roebuck & Co. v. O'Brien*, 178 F.3d 962 (8th Cir. 1999), the Eighth Circuit

discussed actual controversy.  In *Sears*, after being threatened with legal action for mailing

letters directly to debtors in violation of a state statute, Sears filed adversary proceedings for

declaratory judgments that: (1) bankruptcy law preempted the state statute; (2) Sears did not

violate the state statute by sending the letters; and (3) Sears did not violate bankruptcy law by

sending the letters.  *Sears*, 178 F.3d at 964–65.  The Eighth Circuit affirmed the rulings as to the

first two issues but agreed with the district court on the third issue that it was unnecessary for the

court to decide whether Sears violated bankruptcy law because there was no "real controversy" about the issue. *Id.* at 967–68. The letters threatening legal action against Sears, which motivated Sears to file the declaratory judgment actions, alleged only a violation of state law. Therefore, there was no actual controversy regarding whether Sears violated bankruptcy law. *Id.* at 968.

Here, as previously stated, almost every declaration sought by Oakley in its original complaint and proposed amended complaint is the mirror image of, or its defense to, the allegations brought against it in the State Court Action. The two exceptions are the declarations found in subparagraphs 31(f) and 31(i). The Court will address these two exceptions before addressing the remaining declarations.

### *(1) Subparagraph 31(f)*

In subparagraph 31(f), Oakley seeks a declaration that:

> (f)    The Debtor was the lawful owner of the grain which it purchased from [Mears Farms] and which the Debtor in turn sold to Oakley and the funds paid by Oakley to the Debtor for the grain which is the subject of the Removed Complaint <u>and the [Mears Farms] Proof of Claim</u> became the property of the Debtor and to the extent any funds from such sales remained in or came into the Debtor's possession on or after October 23, 2014 or were part of the Interpleader Funds, they became property of the Debtor's estate pursuant to 11 U.S.C. § 541.

(AP No. 19-1015, Doc. Nos. 1, 38-2).[13]

This Court will focus on the portion of subparagraph 31(f) seeking declarations regarding funds Oakley has paid the Debtor for grain which Oakley describes as being the subject of the Removed Complaint and the proof of claim filed by Mears Farms. Oakley requests this Court to find that any funds it paid to the Debtor remaining on hand on the petition date or that were paid

---

[13] As provided above, the underlined portion was added by the proposed amended complaint.

19

into the Interpleader Action are property of the estate.  This Court has already ruled on both issues.

First, as to the funds the Debtor held on the petition date, the Debtor's schedules reflect no cash on hand and only one open bank account with Helena National Bank.  This Court has already determined that the funds in the Debtor's Helena National Bank account on the petition date are property of the estate and ordered turnover of those funds to the bankruptcy trustee.[14] (AP No. 14-1110, Doc. Nos. 26, 28).  To the extent any funds held in the Debtor's bank account on the petition date were funds paid by Oakley to the Debtor for grain, this Court has already determined the funds are property of the estate.

Similarly, this Court has already determined that all the Interpleader Funds are property of the Debtor's estate.  On September 29, 2015, the Court entered an order finding that $240,059.30 of the Interpleader Funds are property of the bankruptcy estate and ordered turnover of those funds to the bankruptcy trustee.[15]  (Case No. 14-15687, Doc. No. 362; *see also* AP No. 15-1009, Doc. No. 154-1).  Later, at the February 21, 2019 hearings, the Court overruled Oakley's limited objection to the language in an order submitted to the Court by the Trustee concerning the remaining Interpleader Funds.  The Court then entered an order finding that the remaining $128,275.18 of the Interpleader Funds are property of the bankruptcy estate and ordered release of those funds to the Trustee.  (AP No. 15-1009, Doc. Nos. 259 (determining funds were property of the estate) and 267 (overruling Oakley's objection to the proposed order)).

---

[14] Richard L. Cox served as Chapter 7 Trustee at the time.

[15] Richard L. Cox served as Chapter 7 Trustee at the time.

Accordingly, this Court has already decided that the funds on hand with the Debtor as of the petition date and the Interpleader Funds are property of the Debtor's bankruptcy estate. Therefore, there is no actual controversy regarding these issues.  Because there is no actual controversy regarding these issues, the Court lacks jurisdiction to consider the declarations in subparagraph 31(f) of the original complaint and proposed amended complaint regarding property of the estate.[16]

### (2) Subparagraph 31(i)

Subparagraph 31(i) of the original complaint and the proposed amended complaint are identical in their language and seek declarations that:

> (i)     The automatic stay should be enforced with regard to the Removed Complaint to the extent that it seeks findings of fact or conclusions of law about the Debtor's pre-petition and post petition activities that are contrary to the above findings (a) through (h) above specifically including, without limitation, the allegations of paragraph 47 of the Removed Complaint that the Debtor "by reason of its conversion of Plaintiffs [sic] property, is liable to the Plaintiffs for the amount of funds it received and converted" and all allegations of the Debtor acting as an agent of Oakley, or as a broker, escrow agent or fiduciary with regard to the sales of grain that are the subject of the Removed Complaint.

(AP No. 19-1015, Doc. Nos. 1, 38-2).

Oakley raised this *exact* issue in its Motion to Enforce Stay filed in the Interpleader Action, which this Court heard and decided on February 21, 2019.  (AP No. 15-1009, Doc. No. 272; Case No. 14-15687, Doc. No. 912.)  This Court ruled against Oakley and found that Mears Farms did not violate the automatic stay in filing the State Court Action.  This Court

---

[16] The Court's finding that it lacks jurisdiction to determine these issues is based only on the lack of actual controversy between the parties.  Bankruptcy courts have exclusive jurisdiction to resolve disputes regarding whether property is property of the estate. *See, e.g., Brown v. Fox Broad. Co. (In re Cox)*, 433 B.R. 911, 920 (Bankr. N.D. Ga. 2010) ("It is generally recognized that '[a] proceeding to determine what constitutes property of the estate pursuant to 11 U.S.C. § 541 is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (E),' and that, '[w]henever there is a dispute regarding whether property is property of the bankruptcy estate, exclusive jurisdiction is in the bankruptcy court.'" (citation omitted) (quoting *Manges v. Atlas (In re Duval Cty. Ranch Co.)*, 167 B.R. 848, 849 (Bankr. S.D. Tex. 1994))).

even made specific findings concerning Count V, including paragraph 47, of the Removed

Complaint in the State Court Action.  After this Court denied[17] Oakley's Motion to Enforce Stay,

Oakley moved for a new trial or to alter or amend the judgment.  (AP No. 15-1009,

Doc. No. 278; Case No. 14-15687, Doc. No. 915).  The Court has denied that motion as well in

an order entered simultaneously with this Order.

Accordingly, this Court has already determined that the automatic stay did not apply to

the State Court Action.  Therefore, there is not an actual controversy as it concerns the

declarations sought in subparagraph 31(i) of the original complaint nor the identical declarations

in the proposed amended complaint, and this Court lacks jurisdiction to consider them.

### (3) *Remaining Declarations*

Next, the Court will consider the relief sought by Oakley in subparagraphs 31(a) through

(h) of the original complaint and the proposed amended complaint, except those portions of

subparagraph 31(f) discussed above regarding funds being property of the estate (these

remaining declarations are hereinafter referred to as the "**Remaining Declarations**").

It is the Remaining Declarations that the Court has found are the mirror images of, or

Oakley's defenses to, the allegations against it in the State Court Action.  Indeed, no one disputes

that an actual controversy exists between Oakley and Mears Farms as it concerns the Remaining

Declarations.  The same is not true, however, between Oakley and the Trustee and/or the

bankruptcy estate.

---

[17] The motion was denied without prejudice to refiling, if new information became available that Jason Coleman's estate or Neauman Coleman did have possession of money that the Debtor allegedly converted, and if Mears Farms were seeking *those* funds, which would be properly sought by the Trustee instead.  (AP No. 15-1009, Doc. No. 280 at 73).  There is no new allegation in this declaratory judgment action that a member of the Debtor is in actual possession of money that the Debtor allegedly converted or that Mears Farms is seeking *those* funds.

The Trustee argues there is no actual controversy involving the Trustee and/or the bankruptcy estate because Oakley does not assert a claim for relief against the Debtor, property of the estate, or the Trustee.  In addition, in his answer to the original complaint in this declaratory judgment action, the Trustee admits or does not dispute many of the underlying facts set forth in the declarations sought by Oakley.  (AP No. 19-1015, Doc. No. 16 ¶ 19).

Oakley advances several arguments as to why there is an actual controversy involving the Trustee and/or the bankruptcy estate.  First, Oakley argues that *if* Mears Farms is successful in state court in proving the Debtor received money from Oakley as its broker or agent, *then* Oakley will pursue a claim against the Trustee for fraudulent concealment exposing the Trustee and/or the bankruptcy estate to liability for such concealment.  At this juncture, however, there is no such ruling in the State Court Action.  Oakley's threat of possible legal action in the future, contingent on the results of the State Court Action, is not a live dispute between the parties equating to an actual controversy between Oakley and the Trustee and/or the bankruptcy estate or even Mears Farms, Oakley, and the Trustee and/or the bankruptcy estate.

Second, Oakley argues there is an actual controversy involving Oakley and the Trustee and/or the bankruptcy estate because a determination by the state court adverse to Oakley could expose the Trustee and/or the bankruptcy estate to claims for disgorgement and turnover of property held by the Debtor in constructive trust for Mears Farms.  This Court simply disagrees.

There has been no evidence suggesting that a constructive trust was created prepetition in favor of Mears Farms, and this Court has not imposed a constructive trust in connection with the Debtor's bankruptcy estate.  In addition, it does not appear that Mears Farms is asking the state court to impose a constructive trust in the State Court Action,[18] nor is Oakley asking this Court

---

[18] Indeed, Mears Farms has waived and released any and all claims it may have against the Trustee and/or the bankruptcy estate.  (AP No. 16-1123, Doc. No. 31; Case No. 14-15687, Doc. No. 677).

to impose such a trust in this declaratory judgment action. Moreover, as stated above, in the context of this bankruptcy proceeding, this Court has previously determined that *all funds* paid by Oakley to the Debtor that (1) were in the Helena National Bank account on or after the petition date, or (2) were deposited into the registry of the Court in the Interpleader Action are property of the estate. The Court finds Oakley's constructive trust argument to be without merit.

Finally, Oakley argues there is an actual controversy between it and the Trustee because there is a mutually exclusive, contradictory set of facts in the Removed Complaint in the State Court Action and in the Trustee's answer to the original complaint in this declaratory judgment action. The differences in these two pleadings may show a difference of opinion as to the facts between Mears Farms and the Trustee, but not as between *Oakley* and the Trustee.

Oakley has not shown that it has any adverse legal interests with the Trustee concerning the Remaining Declarations. The Remaining Declarations Oakley seeks are clearly in response to the allegations brought against it by Mears Farms in the State Court Action and do not involve an actual controversy between Oakley and the Trustee or Oakley and the bankruptcy estate. Oakley simply has not shown there is an actual, live dispute between it and the Trustee and/or the bankruptcy estate that caused it to file this declaratory judgment action. In addition, a portion of the declarations (i.e., "the funds paid by Oakley to the Debtor became property of the Debtor") has already been decided as discussed above in connection with subparagraph 31(f).

Based on the foregoing discussion, the Court finds there *is* an actual controversy as to the Remaining Declarations between Oakley and Mears Farms, but there is *not* an actual controversy between Oakley and the Trustee and/or the bankruptcy estate as it concerns the Remaining Declarations.

24

Although the Court has found no actual controversy between Oakley and the Trustee and/or the bankruptcy estate, the Court must still consider whether it has jurisdiction as it relates to the actual controversy between Oakley and Mears Farms.  In other words, the Court must determine whether it has jurisdiction over the Remaining Declarations as it concerns the actual controversy between two non-debtors, Oakley and Mears Farms.

### B.  Bankruptcy Court Jurisdiction

As previously stated, the case law is clear that the Declaratory Judgment Act is a procedural statute; it does not expand the Court's jurisdiction.  *See, e.g.*, *Skelly Oil Co. v. Phillips Petrol. Co.*, 339 U.S. 667, 671 (1950).  This Court has jurisdiction of "all civil proceedings arising under title 11, or arising in or related to cases under title 11."  28 U.S.C. §§ 1334(b) (2012), 157(a); E.D., W.D. Ark. Local R. 83.1 ¶ I.  Proceedings "arising under" title 11 of the United States Code are those '"that involve a cause of action created or determined by a statutory provision of title 11."'  *GAF Holdings, LLC v. Rinaldi (In re Farmland Indus., Inc.)*, 567 F.3d 1010, 1018 (8th Cir. 2009) (quoting *Wood v. Wood (In re Wood)*, 825 F.2d 90, 96 (5th Cir. 1987)).  Proceedings "arising in" a case under title 11 of the United States Code '"are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy."'  *Id.* (quoting *In re Wood*, 825 F.2d at 97).

Proceedings are "related to" a case under title 11 of the United States Code if they meet the "conceivable effect" test adopted by the Eighth Circuit.  *Id.* at 1019.  Under this test, a proceeding is "related to" a bankruptcy case '"[where] the outcome of that proceeding could *conceivably have any effect on the estate* being administered in the bankruptcy."'  *Id.* (quoting *Specialty Mills, Inc. v. Citizens State Bank*, 51 F.3d 770, 774 (8th Cir. 1995)).  '"An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or

freedom of action . . . and which in any way impacts upon the handling and administration of the bankrupt estate.'" *Id*. (quoting *Specialty Mills*, 51 F.3d at 774). As recognized by the Trustee, the Eighth Circuit has also explained that "even a proceeding which portends a mere contingent or tangential effect on a debtor's estate meets the broad jurisdictional test" for "related to" jurisdiction. *Nat'l Union Fire Ins. Co. v. Titan Energy, Inc. (In re Titan Energy, Inc.)*, 837 F.2d 325, 330 (8th Cir. 1988).

Proceedings that "arise under" the Bankruptcy Code or "arise in" a bankruptcy case are classified as core proceedings, and proceedings that are merely "related to" the bankruptcy case are classified as noncore proceedings. 28 U.S.C. § 157(b)–(c) (2012).

Oakley argues this declaratory judgment action constitutes a core proceeding because the declarations it seeks in subparagraphs 31(f) and (h) of the proposed amended complaint are based on the Bankruptcy Code. It further argues the proposed amended complaint is a core proceeding because it contains an objection to the proof of claim filed by Mears Farms.[19] The Court will address these two subparagraphs first.

As stated previously, this Court lacks jurisdiction to consider the portions of subparagraph 31(f), as stated in both the original complaint and the proposed amended complaint, concerning funds being property of the estate because there is no actual controversy regarding these declarations.

In the remainder of subparagraph 31(f), Oakley seeks declarations that the Debtor was the lawful owner of the grain it purchased from Mears Farms and in turn sold to Oakley. What remains of subparagraph 31(f) is not based on the Bankruptcy Code but is instead based on state

---

[19] At the hearing, Oakley informed the Court that since the filing of this declaratory judgment action, Oakley filed its own proof of claim in the Debtor's bankruptcy case. Its proof of claim is a contingent claim for attorney fees yet to be awarded in the Trustee Turnover Action. (Case No. 14-15687, Claim No. 125). Oakley argued that filing this proof of claim made it a creditor of the estate with standing to object to the proof of claim filed by Mears Farms.

property law and an interpretation of the transactions between the parties. These are not core proceedings.

As to subparagraph 31(h), the Court first recognizes that the declarations sought in subparagraph 31(h) of the proposed amended complaint have more revisions from the original complaint than the other declarations. The subparagraph, reflecting both the original declarations and proposed amended declarations, reads as follows:

> (h)    The [Mears Farms] Proof of Claim which has been ~~approved~~ <u>deemed allowed</u> by the Trustee is based on the sale of ~~such~~ grain <u>by [Mears Farms]</u> to the Debtor ~~without any reference to the money claimed being held by the Debtor acting~~ <u>and which the Debtor in turn sold to Oakley and the funds paid by Oakley to the Debtor became property of the Debtor and the Debtor did not act</u> as a broker, escrow agent or fiduciary ~~and without any reference to any broker's, escrow agent's or fiduciary's fees or commissions being owed to the Debtor's estate~~ <u>with regard to such funds</u> and the [Mears Farms] Proof of Claim represents [Mears Farms'] ~~their sole~~ <u>election of the exclusive</u> remedy for the money claimed to <u>be</u> due for the grain sales that are the subject of the Removed Complaint <u>and the Proof of Claim</u>.

(AP No. 19-1015, Doc. Nos. 1, 38-2).[20]

A close reading of the original and amended versions of subparagraph 31(h) reveals that the change in wording does not alter the relief sought nor does either version present a core proceeding. Although inartfully drafted, Oakley seeks declarations regarding the nature of the transactions between the Debtor and Mears Farms and the Debtor and Oakley (i.e., purchase and sale versus broker or agent) and seeks a declaration that Mears Farms is barred from suing it in state court because the filing of Mears Farms' proof of claim should be declared Mears Farms' exclusive remedy. All these declarations involve state law interpretations of the transactions at issue, not interpretations of bankruptcy law. Therefore, the Court finds that the declarations

---

[20] As provided above, the underlined portions are added by the proposed amended complaint and the struck-through portions are deleted by the proposed amended complaint.

sought in subparagraph 31(h) of the original complaint and the proposed amended complaint are not based on the Bankruptcy Code.

Oakley raises an additional argument related to the proof of claim declaration found in subparagraph 31(h) being a core proceeding, asserting that the declaration is an objection to Mears Farms' proof of claim. The Court disagrees with this characterization. Asking this Court to decide whether the filing of the proof of claim should be declared Mears Farms' exclusive remedy as to the transactions involved is *not* an objection to claim. It, instead, raises the issue of whether Oakley has a viable defense to the State Court Action, a state law question, not an issue to be decided under the Bankruptcy Code.

To be clear, this Court disagrees with Oakley that the proposed amended complaint in any way constitutes an objection to the proof of claim filed by Mears Farms. In fact, it appears that Oakley, instead of objecting to the proof of claim, is asking this Court to determine that the proof of claim filed by Mears Farms represents its *exclusive* remedy.

As to the other declarations not already discussed in this section,[21] this Court finds that they are not created by or based on provisions of the Bankruptcy Code, nor are they dependent upon the existence of the bankruptcy case. Rather, they seek determinations of the same issues involved in the State Court Action. In ruling on whether to abstain and remand the State Court Action at the February 21, 2019 hearings, this Court analyzed whether it had subject matter jurisdiction of that action. The Court found that the State Court Action was based solely on state law, not the Bankruptcy Code, and that the claims existed prior to the bankruptcy case and could continue to exist outside of the bankruptcy. (AP No. 15-1009, Doc. No. 280 at 110–111). Therefore, this Court found that it did not have "arising under" or "arising in" jurisdiction of the

---

[21] Subparagraphs 31(a) through 31(e) and 31(g). As previously stated, this Court lacks jurisdiction to consider the declarations sought in subparagraph 31(i) because there is no actual controversy regarding those declarations.

State Court Action but, at most, had "related to" jurisdiction of the action because the outcome of

that action could conceivably have an effect on the Debtor's bankruptcy estate.

(AP No. 15-1009, Doc. No. 280 at 110–111).

The Trustee argues that this Court does not have "related to" jurisdiction of this

declaratory judgment action, but at the same time acknowledges the possibility of some effect on

the bankruptcy estate, even if small, because the outcome of the dispute could possibly affect the

amounts of claims in this bankruptcy case.  In *National Union Fire Insurance Co. v. Titan*

*Energy, Inc. (In re Titan Energy, Inc.)*, 837 F.2d 325 (8th Cir. 1988), the Eighth Circuit

evaluated a party's request for declaratory relief regarding the scope of certain insurance

policies.  The Eighth Circuit found a proceeding to determine the insurer's rights and obligations

under the policies could conceivably have an effect on the estate, and so it was "related to" the

bankruptcy case even though "it remain[ed] to be seen whether, and to what extent, National

Union's action [would] affect [the debtor's] estate."  *In re Titan Energy*, 837 F.2d at 330.  In

*Titan Energy*, the court recognized that the action was brought by a non-debtor against another

non-debtor and would only have an effect on the bankruptcy estate if certain contingencies

occurred, but nevertheless found that the bankruptcy court had "related to" jurisdiction.  *Id*. at

330, 332.

Here, the Trustee recognized the language in *Titan Energy* that "related to" jurisdiction

exists even if the proceeding "portends a mere contingent or tangential effect on a debtor's

estate."  (AP No. 19-1015, Doc. No. 17 ¶ 14).[22]  For the same reasons stated in the Court's ruling

---

[22] While acknowledging this standard, the Trustee also argued that the effect of the dispute between Mears Farms
and Oakley is "simply too attenuated and insufficiently significant to confer jurisdiction on this Court," citing the
cases of *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804 (1986); *Fabrique, Inc. v. Corman*, 813 F.2d
725 (5th Cir. 1987); *Jones v. Mayhone (In re Mayhone)*, 165 B.R. 264 (Bankr. W.D. Ark. 1994); and *Miller v.
Kemira, Inc. (In re Lemco Gypsum, Inc.)*, 910 F.2d 784 (11th Cir. 1990), in support of this proposition.
(AP No. 19-1015, Doc. No. 17 ¶ 14).  This Court simply disagrees.  The Court finds the cases cited by the Trustee
distinguishable.  The first two cases concerned federal question jurisdiction under 28 U.S.C. § 1331 and the

on abstention and remand of the State Court Action, the Court finds it has "related to" jurisdiction over the Remaining Declarations in this declaratory judgment action because although contingent and tangential, the outcome could conceivably have an effect on, or could peripherally impact the administration of the bankruptcy estate.

Even though the Court has found an actual case and controversy and "related to" jurisdiction as to the Remaining Declarations, its analysis does not end here.

### C. Court's Discretion

In his Motion to Dismiss, the Trustee requests, in the alternative to dismissal for lack of subject matter jurisdiction, that this Court exercise its discretion to abstain from hearing this declaratory judgment action. Even where a court has jurisdiction of an action brought under the Declaratory Judgment Act, it may refrain from exercising that jurisdiction. This is an exception to the general rule that a court "must exercise its jurisdiction over a claim unless there are 'exceptional circumstances' for not doing so." *Scottsdale Ins. Co. v. Detco Indus., Inc.*, 426 F.3d 994, 996 (8th Cir. 2005) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16–19 (1983) and *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976)).

Where there is a related state court action that "sounds in state law and bears a limited connection to debtor's bankruptcy case, abstention is particularly compelling." *Nat'l Union Fire Ins. Co. v. Titan Energy, Inc. (In re Titan Energy, Inc.)*, 837 F.2d 325, 332 (8th Cir. 1988). In

---

"substantiality" element of such jurisdiction. *Merrell Dow*, 478 U.S. at 805, 814; *Fabrique, Inc.*, 813 F.2d at 725–26. This case, however, involves bankruptcy "related to" jurisdiction under 28 U.S.C. § 1334. The next two cases cited by the Trustee involved situations where the outcome was found to have no effect on the administration of the estate and therefore "related to" jurisdiction was lacking. *In re Mayhone*, 165 B.R. at 266 (concerning postpetition actions that would have no impact on the "handling and administration of the bankruptcy estate" or the "allocation of assets"); *In re Lemco Gypsum, Inc.*, 910 F.2d at 789 (concerning a dispute between two non-debtors following a final sale of property from the chapter 7 estate that would have no effect on the "bankrupt's estate or the allocation of assets among creditors").

addition, abstention is proper if the resolution of the claims "may have only a peripheral impact on [the debtor's] estate" or have an effect on the bankruptcy estate only if certain contingencies occur. *Id.*

Under the standards set forth by the Supreme Court in *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491 (1942) and *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995), it is clear that courts "possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton*, 515 U.S. at 282. As explained by the Supreme Court in *Wilton*:

> By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants. Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close.

*Id.* at 288.

As explained by the Eighth Circuit, "[t]he full scope of a . . . court's discretion to grant a stay or abstain from exercising jurisdiction under the Declaratory Judgment Act differs depending upon whether a 'parallel' state court action involving questions of state law is pending." *Lexington Ins. Co. v. Integrity Land Title Co.*, 721 F.3d 958, 967 (8th Cir. 2013) (citing *Scottsdale Ins. Co.*, 426 F.3d at 999). "Suits are parallel if 'substantially the same parties litigate substantially the same issues in different forums.'" *Scottsdale Ins. Co.*, 426 F.3d at 997 (quoting *New Beckley Mining Corp. v. Int'l Union, United Mine Workers*, 946 F.2d 1072, 1073 (4th Cir. 1991)). While the definition is "imprecise" the Eighth Circuit has explained:

> As a functional matter . . . state proceedings are parallel if they involve the same parties or if the same parties may be subject to the state action and if the state action is likely to fully and "satisfactorily" resolve the dispute or uncertainty at the heart of the federal declaratory judgment action.

*Lexington Ins. Co.*, 721 F.3d at 968 (quoting *Brillhart*, 316 U.S. at 495); *see also Royal Indem. Co. v. Apex Oil Co.*, 511 F.3d 788, 796 (8th Cir. 2008) (federal court has discretion to abstain when state court proceeding "present[s] 'the same issues, not governed by federal law, between the same parties,' and the [federal] court . . . evaluate[s] 'whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc.'" (quoting *Brillhart*, 316 U.S. at 495)).

When a parallel proceeding is involved, "a federal court may abstain from the proceeding because '[o]rdinarily it would be uneconomical as well as vexatious for a federal court to proceed in [the] declaratory judgment suit.'" *Royal Indem. Co.*, 511 F.3d at 793 (quoting *Brillhart*, 316 U.S. at 495). The federal court enjoys "broad discretion" in determining whether to exercise its jurisdiction when there is a parallel state court action involved. *Lexington Ins. Co.,* 721 F.3d at 967 (citing *Scottsdale Ins. Co.*, 426 F.3d at 997). "This broad discretion is to be guided by considerations of judicial economy, by 'considerations of practicality and wise judicial administration,' and with attention to avoiding '[g]ratuitous interference' with state proceedings." *Id.* at 967–68 (internal citations omitted).

Where there is not a parallel action pending in state court, the federal court still enjoys discretion to abstain from hearing the declaratory judgment action, but its discretion is "less broad" and is governed by a six-factor test adopted by the Eighth Circuit in *Scottsdale Insurance Co. v. Detco Industries, Inc.*, 426 F.3d 994 (8th Cir. 2005). Under this test, the court should consider:

> (1) whether the declaratory judgment sought "will serve a useful purpose in clarifying and settling the legal relations in issue";

(2) whether the declaratory judgment "will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the [federal] proceeding";

(3) "the strength of the state's interest in having the issues raised in the federal declaratory judgment action decided in the state courts";

(4) "whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending";

(5) "whether permitting the federal action to go forward would result in unnecessary 'entanglement' between the federal and state court systems, because of the presence of 'overlapping issues of fact or law'"; and

(6) "whether the declaratory judgment action is being used merely as a device for 'procedural fencing'—that is, 'to provide another forum in a race for res judicata' or 'to achiev[e] a federal hearing in a case otherwise not removable.'"

*Scottsdale Ins. Co.*, 426 F.3d at 998 (quoting *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 422 (4th Cir. 1998)).

While courts enjoy discretion, the "discretion must be reasonably exercised and cannot be made 'as a matter of whim or personal disinclination.'" *Diego, Inc. v. Chang (In re IPDN Corp.)*, 352 B.R. 870, 878 (Bankr. E.D. Mo. 2006) (quoting *Pub. Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962)).

In considering the declaratory judgment action before this Court in relation to the State Court Action, it is clear this Court should abstain from hearing the declaratory judgment action in favor of the state court forum for a number of reasons.

First, although this Court has found it has "related to" jurisdiction of the Remaining Declarations, that is only because of the broad scope of "related to" jurisdiction. The effect of this declaratory judgment action on the administration of the Debtor's bankruptcy estate, while conceivable, is contingent and tangential. Although this Court believes there is a sufficient relationship between the two actions to give this Court "related to" jurisdiction, clearly the declaratory judgment action is on the outer bounds of this Court's jurisdiction and this Court

33

believes it will have a minimal, if any, impact on the administration of the Debtor's estate.  In addition, this minimal impact is only possible if certain contingencies occur.  Therefore, this declaratory judgment action is precisely the type of case in which this Court should exercise its discretion to abstain in favor of another forum.  *See, In re Titan Energy*, 837 F.2d at 332–33.

Abstention is also warranted because the declaratory judgment action and the State Court Actions are "parallel" actions.  Although the parties to this declaratory judgment action are slightly different than the parties to the State Court Action,[23] case law only requires the parties to be *substantially* the same.  *Atain Specialty Ins. Co. v. Frank*, No. 4:12-CV-01290-NKL, 2013 WL 12145863, at *4 (W.D. Mo. March 25, 2013) ("[T]wo cases can involve substantially the same parties 'even if the named parties [are] not identical.'" (quoting *W. Heritage Ins. Co. v. Sunset Sec., Inc.*, 63 F. App'x 965, 967 (8th Cir. 2003))); *see also Scottsdale Ins. Co.*, 426 F.3d at 997.  With the exception of the Trustee, all the parties to this declaratory judgment action (or their entities)[24] are involved in the State Court Action.  As previously stated, however, there is not an actual controversy between the Trustee and/or the bankruptcy estate and Oakley as it concerns the Remaining Declarations.  Further, it should be noted that one of the provisions of the compromise settlement between the Trustee and Mears Farms was that Mears Farms "waives and releases any and all claims it may hold or assert against the [T]rustee [and] the [bankruptcy] estate. . . ."  (AP No. 16-1123, Doc. No. 31).  Therefore, this Court does not believe that the

---

[23] The State Court Action was filed by Travis Mears Farms, Inc. and Scott Mears Farms, Inc., against Oakley Grain, Inc., Bruce Oakley, Inc., Gavilon Grain, LLC, Jason Coleman, Neauman Coleman, and John Does 1 through 10. (AP No. 19-1015, Doc. No. 1-4).  This declaratory judgment action was filed by Oakley Grain, Inc. and Bruce Oakley, Inc. against Travis Mears, Travis Mears Farms, Inc., Scott Mears, Scott Mears Farms, Inc., and M. Randy Rice, Trustee.  (AP 19-1015, Doc. No. 1).

[24] Travis Mears and Scott Mears are each named individually as defendants to this declaratory judgment action, along with Travis Mears Farms, Inc. and Scott Mears Farms, Inc.  Only the two corporations are plaintiffs in the State Court Action.

addition of the Trustee to the declaratory judgment action brought by Oakley precludes a finding of parallel cases.

In addition to the substantial similarity of the parties, the issues in the two actions are also substantially the same.   As already stated herein, the Remaining Declarations are basically the mirror image of the allegations against Oakley in the State Court Action.   In fact, the Remaining Declarations can be fairly characterized as Oakley's *defense* to the State Court Action.   Indeed, as stated by this Court in its February 21, 2019 oral ruling, granting Mears Farms' motion to abstain and remand, the State Court Action is based on state law, not federal law. (AP No. 15-1009, Doc. No. 280 at 106-07).  If this Court were to rule on the Remaining Declarations, it would be required to consider and evaluate the same state laws.  Finally, this Court finds the State Court Action is "likely to . . . resolve the dispute or uncertainty at the heart of the federal declaratory judgment action."  *Lexington Ins. Co.*, 721 F.3d at 968.

For the foregoing reasons, this Court finds that the State Court Action is a parallel action to this declaratory judgment action.  The two actions involve substantially the same parties, the same issues, and the same arguments.  The Court finds that judicial economy, practicality, and wise judicial administration all weigh in favor of this Court exercising its discretion under the Declaratory Judgment Act to abstain from hearing this case.

Even if the two actions were not "parallel," this Court finds that the result would be the same.  Under the six-factor test in *Scottsdale*, although the Court's discretion is less broad, application of the factors weighs in favor of abstention.

As to the first and second factors, the declaratory judgment action will not serve a useful purpose in clarifying and settling the legal relations, or in affording relief from the uncertainty giving rise to this action.  Rather, the Court finds that this action would further complicate the

matters between the parties.  Neither the Debtor nor the Trustee are parties to the State Court

Action; however, Oakley has named the Trustee in the declaratory judgment action to have this

Court make declarations on issues subject to the State Court Action.  This unnecessarily

entangles the Trustee and the bankruptcy estate into the dispute between Oakley and Mears

Farms.

  As to the third, fourth, and fifth factors, in granting Mears Farms' motion to abstain and

remand, the Court has already found that the State Court Action is based on state law; that, at

most, the State Court Action was "related to" the bankruptcy but did not arise in or under the

Bankruptcy Code; that the State Court Action could not have been brought before this Court

absent the "related to" jurisdiction of 28 U.S.C. § 1334; and that the state court was the better

forum to adjudicate the state law issues raised in the State Court Action.  (AP No. 15-1009,

Doc. No. 280 at 106–115).  In so ruling, the Court has already found that the state court has an

interest in hearing the issues involved in the State Court Action.  This Court abstained from

hearing the State Court Action and remanded the action to the Jackson County Circuit Court.

For this Court to now decide the very issues that are the subject of that remanded action would

undoubtedly result in unnecessary entanglement between the federal and state forums and be a

waste of judicial economy.

  Finally, and importantly, the sixth element also supports this Court's decision to abstain.

The Court is to evaluate "whether the declaratory judgment action is being used merely as a

device for 'procedural fencing'—that is, 'to provide another forum in a race for res judicata' or

'to achiev[e] a federal hearing in a case otherwise not removable.'"  *Scottsdale Ins. Co.*, 426 F.3d

at 998 (quoting *Aetna Cas. & Sur. Co.*, 139 F.3d at 422).  The Declaratory Judgment Act "is not

to be used either for tactical advantage by litigants or to open a new portal of entry to federal

36

court for suits that are essentially defensive or reactive to state actions." *Int'l Ass'n of Entrepreneurs of Am. v. Angoff*, 58 F.3d 1266, 1270 (8th Cir. 1995) (citing, among other cases, *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 18 n.20).

In *Angoff*, the Eighth Circuit upheld the lower court's refusal to hear a declaratory judgment action that was filed by IAEA "only after it had been sued in state court and its removal petition had been denied as untimely." *Id.* The Eighth Circuit stated, "There is no need to allow state court defendants like IAEA to circumvent the removal statute's deadline by using the Declaratory Judgment Act as a convenient and temporally unlimited back door into federal court." *Id.* (citing *Cont'l Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1524 (9th Cir. 1987)).

At the February 21, 2019 hearings, this Court recognized the many litigation tactics Oakley has used in this bankruptcy proceeding and even stated it appeared Oakley could have been engaged in forum shopping.  (AP No. 15-1009, Doc. No. 280 at 115–16).  The history of Oakley's actions in connection with the Debtor's bankruptcy proceeding includes the following:

- First, Oakley initiated the Interpleader Action in federal district court;

- After the Debtor filed for bankruptcy, Oakley opposed referral of the Interpleader Action to this Court but later withdrew its opposition;

- After being sued in state court by Mears Farms, Oakley attempted to remove the State Court Action *into the pending Interpleader Action* even though Oakley had previously been dismissed from the Interpleader Action;

- Although it attempted to remove the State Court Action to this Court, Oakley stated in its amended notice of removal that it did not consent to this Court entering final orders or judgment in the case;

- Almost immediately after attempting to remove the State Court Action into the pending Interpleader Action, Oakley filed a motion for the District Court to withdraw the reference of the entire adversary proceeding, which included the Interpleader Action and the removed State Court Action;

- While the motion to withdraw the reference was pending, Oakley filed a response in opposition to abstention and remand of the State Court Action;

- After the District Court denied Oakley's motion to withdraw the reference, Oakley appealed the District Court's decision, but the appeal was dismissed on motion of the Trustee;

- After being unsuccessful in its attempts to have the District Court hear the State Court Action, and despite stating that it did not consent to this Court entering final orders or judgment in the case, Oakley continued to oppose abstention and remand of the State Court Action;

- In addition, after its motion to withdraw the reference was denied, Oakley filed the Motion to Enforce Stay and supplemental motion to enforce the stay in the Interpleader Action, arguing the State Court Action violated the automatic stay and was void ab initio;

- Despite arguing that it did not consent to this Court entering final orders or judgment in the State Court Action, Oakley filed this declaratory judgment action, asking this Court to make declarations that are basically the mirror images of the allegations against it in the State Court Action;

- After this Court ruled against Oakley at the February 21, 2019 hearings, remanding the State Court Action to Jackson County Circuit Court, and also finding that the

State Court Action did not violate the automatic stay, Oakley asked this Court to reconsider its rulings on the Motion to Enforce Stay and supplemental motion based primarily on the Trustee's answer to this declaratory judgment action agreeing with Oakley as to many of the underlying facts (and this Court has denied Oakley's motion in an order entered simultaneously with this order); and

- Finally, in this declaratory judgment action, Oakley has not only opposed dismissal, but after receiving the Trustee's Motion to Dismiss, moved for summary judgment, filed its own proof of claim based on a contingent debt for attorney fees that are yet to be incurred in another case, and then moved to amend its complaint.

To say that Oakley has engaged in procedural litigation tactics is an understatement. Since being named as a defendant to the State Court Action—that was filed over two years ago—Oakley has filed numerous pleadings in this Court, the United States District Court for the Eastern District of Arkansas, and the Eighth Circuit Court of Appeals. Oakley removed the State Court Action to this Court (improperly into the Interpleader Action) and then filed a motion to have the District Court withdraw the reference. After losing on the motion to withdraw the reference, it then opposed Mears Farms' motion for abstention and remand. While the motion for abstention and remand was pending, Oakley filed this declaratory judgment action seeking declarations directly related to the allegations brought in the State Court Action. It is clear to this Court that Oakley's sole purpose in filing and pursuing this declaratory judgment action is to achieve a federal hearing on state law issues pending in the State Court Action, an action this Court has abstained from hearing and remanded to state court.

Based on the foregoing discussion, the Court finds that the declaratory judgment action would have little or no effect on the administration of the bankruptcy estate; the nexus between

the declaratory judgment action and the bankruptcy estate is very attenuated; the pending State

Court Action is a parallel action to the declaratory judgment action; the issues in the declaratory

judgment action require this Court to consider and rule on the same state law issues the state

court will consider in the State Court Action; and ruling on the declaratory judgment action

would have this Court unnecessarily interfere with the State Court Action.  For these reasons, the

Court exercises its discretion to abstain from hearing this declaratory judgment action.

### D.  Motion for Leave to Amend

Before discussing the Trustee's alternative request for dismissal, the Court will address

Oakley's Motion for Leave to Amend.  Pursuant to Rule 15 of the Federal Rules of Civil

Procedure, made applicable to this adversary proceeding by Rule 7015 of the Federal Rules of

Bankruptcy Procedure, "[t]he court should freely give leave [to amend] when justice so

requires."  FED. R. CIV. P. 15(a)(2).  While leave to amend should be given "freely," parties "do

not have an absolute or automatic right to amend." *United States ex rel. Lee v. Fairview Health

Sys.*, 413 F.3d 748, 749 (8th Cir. 2005) (citing *Meehan v. United Consumers Club Franchising

Corp.*, 312 F.3d 909, 913 (8th Cir. 2002)).  This Court need not grant leave to amend when the

amendment would be futile.  *Id.* ("Futility is a valid basis for denying leave to amend." (citing

*Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir.

2005))).

The Court first observes that Oakley's stated purpose in seeking leave to amend its

complaint is "to expand upon and better explain [its] basis for subject matter jurisdiction."

(AP No. 19-1015, Doc. No. 38 ¶ 5).  Oakley's purpose, however, is not met by the proposed

amended complaint.  As previously stated, the declarations Oakley seeks in the proposed

amended complaint are basically the same as the declarations it seeks in its original complaint.

40

Despite Oakley's contentions to the contrary, the proposed amendments add nothing of substance to this action. Neither the original complaint nor proposed amended complaint involves a core proceeding, nor does the proposed amended complaint include an objection to claim under Section 502 of the Bankruptcy Code.

Further, in ruling on the issues before the Court, this Court *has* considered both the original complaint and the proposed amendments. Even considering the allegations and relief sought in the proposed amended complaint, this Court has concluded that it should not hear this action because: (1) there is no actual controversy regarding a portion of the declarations in subparagraph 31(f) and all of the declarations in subparagraph 31(i); (2) this Court has only "related to" jurisdiction over the Remaining Declarations; and (3) for the myriad of reasons given above, abstention is warranted.

Accordingly, Oakley's Motion for Leave to Amend is denied as futile.

### E.  Motion to Dismiss

Next, the Court will consider the Trustee's and Mears Farms' alternative request for this Court to refrain from exercising its jurisdiction and dismiss this action. This Court has discretion when deciding whether "to hear, stay, or dismiss declaratory judgment actions brought before it." *Creative Compounds, LLC v. Sabinsa Corp.*, No. 1:04CV114CDP, 2004 WL 2601203, at *1 (E.D. Mo. Nov. 9, 2004). The Trustee argues that this declaratory judgment action fails to fulfill the purposes of declaratory judgment actions. This Court agrees and grants the Trustee's and Mears Farms' request for dismissal for the reasons stated below.

First, this Court has already found that no controversy exists, and this Court lacks jurisdiction to hear, the property of the estate declarations sought by Oakley in subparagraph

31(f) and the declarations sought by Oakley in subparagraph 31(i).  Because this Court lacks jurisdiction over these issues, dismissal is warranted as to these declarations.

As to the Remaining Declarations, this Court has already found that they are the mirror images of, or Oakley's defenses to, the allegations against it in the State Court Action.  This Court recognizes that courts often prefer to stay federal declaratory judgment actions when there are parallel state court proceedings, especially where the issues may return to the federal action. *See, e.g., Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 n.2 (1995).  The declaratory judgment action before the Court, however, is not a case where a return of any of the issues to federal court is likely.  *Cf. Int'l Ass'n of Entrepreneurs of Am. v. Angoff*, 58 F.3d 1266, 1271 (8th Cir. 1995).[25] Nor is this a case where the Court can conceive of an actual controversy remaining between the parties after the State Court Action is resolved.  *Cf. Royal Indem. Co. v. Apex Oil Co.*, 511 F.3d 788, 797 (8th Cir. 2008).  Rather, this Court finds that resolution of the State Court Action should resolve the issues between the parties, and "will honor the choice of forum of the real plaintiff in this dispute," Mears Farms.  *Creative Compounds*, 2004 WL 2601203, at *3.

In addition, the Court has also found that Oakley's actions do not serve the purpose of the Declaratory Judgment Act, further supporting dismissal of this case.  *See, Creative Compounds*, 2004 WL 2601203, at *2 (granting motion to dismiss partly because the action would not further the purpose of the Declaratory Judgment Act to provide a remedy to minimize damages and give an early adjudication to a party threatened with suit).

For all of these reasons, the Court finds that dismissal is warranted.

---

[25] As previously noted, in its settlement of the Mears Preference Action, Mears Farms waived and released all claims against the Trustee and the bankruptcy estate.

### F.  Attorney Fees

The final issue before the Court is the Trustee's request for sanctions against Oakley.  In his Motion to Dismiss, the Trustee argues that Oakley's actions are an "attempt at re-litigating issues that have previously been decided against it."  (AP No. 19-1015, Doc. No. 17 ¶ 18).  The Trustee requests his attorney's fees and costs incurred in bringing the Motion to Dismiss.  In support of his request, the Trustee cites the cases of *Brown v. Mitchell (In re Arkansas Communities, Inc.)*, 827 F.2d 1219 (8th Cir. 1987) and *Chambers v. Nasco, Inc.*, 501 U.S. 32 (1991).

This Court understands the Trustee's frustration in responding to and defending this declaratory judgment action as well as the various pleadings filed by Oakley in the Interpleader Action.  As stated earlier, this Court has found that two of the declarations sought by Oakley do in fact involve issues previously decided by this Court (i.e., the property of the estate issues in subparagraph 31(f) and the issues regarding enforcement of the automatic stay in subparagraph 31(i)).  However, the Remaining Declarations involve an actual controversy, at least between Oakley and Mears Farms.  In addition, Oakley's actions, while involving multiple procedural maneuvers, do not rise to the level of being sanctionable.  Unlike the cases cited by the Trustee, the Court does not find that Oakley's conduct warrants a finding of bad faith or fraud on the Court.  Accordingly, the Court denies the Trustee's request for sanctions against Oakley in the form of attorney's fees and costs.

43

## IV.  Conclusion

Dismissal is appropriate as to the declarations sought in subparagraph 31(f) regarding property of the estate and the declarations sought in subparagraph 31(i), as these issues have already been decided by this Court, and there is no actual controversy regarding these issues.

Dismissal of the Remaining Declarations is also appropriate as this Court has found it has only "related to" jurisdiction over the action, abstention in favor of the State Court Action is proper for the many reasons given, and the unique facts of this case support dismissal.

The Trustee's request for sanctions against Oakley in the form of attorney's fees and costs is denied as not warranted.

Accordingly, it is hereby ORDERED that Oakley's Motion for Leave to Amend is DENIED as futile, the Trustee's Motion to Dismiss this declaratory judgment action is GRANTED, and the Trustee's request for sanctions is DENIED.

**IT IS SO ORDERED.**

Phyllis M. Jones
United States Bankruptcy Judge
Dated:  10/11/2019

cc:   Mr. Hamilton Moses Mitchell
      Mr. M. Randy Rice, Trustee
      Mr. Barrett S. Moore
      Mr. Stuart W. Hankins
      Mr. Allen Vaughan Hankins
      Mr. Fletcher C. Lewis